*In re* POTTS' ESTATE.

POTTS *v.* BOURNS.

1. WILLS—UNINTENTIONAL OMISSION—EVIDENCE—SUFFICIENCY.

Evidence showing that testator was of keen mentality at time he executed will, drafted by himself, which made a clear, concise and complete disposition of all his property; that he was fully mindful he had two granddaughters who were the issue of his deceased son's first marriage, hereby seeking to participate in distribution of testator's estate as unintentionally-omitted heirs; that contacts between testator and plaintiffs and their mother after she had divorced his son, while not colored by ill feeling, were infrequent for about 12 years before will was executed; that in envelope containing will but not attached thereto there was found an unsigned slip of paper in testator's handwriting mentioning them as entitled to stated amount to be deducted from son's share of the estate; and that circumstances surrounding execution of will threw no light on testator's intention to omit or not to omit plaintiffs, *held*, insufficient to present to jury question of whether plaintiffs were unintentionally omitted from will (Act No. 288, chap. 2, § 13, Pub. Acts 1939).

2. TRIAL—PRELIMINARY QUESTION—SUFFICIENCY OF EVIDENCE TO SUSTAIN VERDICT.

Before a case may be submitted to the jury for consideration the trial judge must decide the preliminary question, whether there is any evidence upon which a jury can properly find a verdict for the party producing it upon whom the burden of proof is imposed.

3. WILLS—INADVERTENT OMISSION—EVIDENCE.

The fact that there was a polite relationship between testator and daughters of his deceased son by latter's divorced wife does not prove the granddaughters were omitted from will inadvertently (Act No. 288, chap. 2, § 13, Pub. Acts 1939).

4. SAME—UNINTENTIONAL OMISSION—BURDEN OF PROOF.

To sustain burden of proving testator omitted daughters of his deceased son by latter's divorced wife from will unintentionally and by mistake or accident, persuasive testimony to that effect must be introduced (Act No. 288, chap. 2, § 13, Pub. Acts 1939).

5. SAME—UNINTENTIONAL OMISSION—UNSIGNED MEMORANDUM IN TESTATOR'S HANDWRITING.

Unsigned memorandum in testator's handwriting which was found in same envelope as his will but not attached thereto, which was ineffective as a testamentary instrument and which fails to indicate whether he meant it to have a legal effect or not, was ineffective to prove his granddaughters' contention that because they were mentioned therein the testator intended to provide for them (Act No. 288, chap. 2, § 13, Pub. Acts 1939).

6. TRIAL—QUESTION FOR JURY—CONJECTURE.

A case should not be submitted to the jury where a verdict must rest upon a conjecture or guess.

Appeal from Oakland; Holland (H. Russel), J. Submitted October 8, 1942. (Docket No. 51, Calendar No. 42,031.) Decided December 23, 1942. Rehearing denied April 6, 1943.

In the matter of the estate of James R. Potts, deceased. Alice Potts and Jeanette Potts Wahlig filed petition in probate court for a share in deceased's estate. From judgment of probate court denying claim, petitioners appealed to circuit court. Affirmed. Petitioners appeal. Affirmed.

*Estes & Cooney,* for plaintiffs.

*Cummins & Cummins,* for defendant Helen Potts.

*Willis D. Lefurgy,* attorney and next friend for defendant Robert Potts.

NORTH, J. James R. Potts died testate in June, 1940, survived by three grandchildren, the issue of

his son Dwight Potts, who predeceased the testator. Dwight Potts was twice married; the first time to Erma Potts in 1917, ending in a divorce in 1926; and the second time to Helen Potts. Two children, plaintiffs herein, were born of that first marriage. One child, Robert, was born of the second marriage. The testator made provision for his grandchild Robert Potts and for Helen Potts, but omitted to provide for plaintiffs in his will dated August 17, 1938. The probate court and the circuit court held that plaintiffs did not prove their omission from the will was unintentional or that it occurred by mistake or accident. At the close of plaintiffs' proofs the circuit judge directed a verdict for defendants. From the judgment entered thereon plaintiffs have appealed.

The applicable statute is chapter 2, § 13, of the probate code (Act No. 288, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 16289-2 (13), Stat. Ann. 1942 Cum. Supp. § 27.3178 (83)]):

"When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake or accident, such child, or the issue of such child, shall have the same share in the estate of the testator as if he had died intestate."

The circuit judge held at the conclusion of proofs "no circumstance or chain of circumstances are here present which give rise to a question of fact for the jury." Plaintiffs rely largely on *In re Estate of Stebbins*, 94 Mich. 304 (34 Am. St. Rep. 345), where the court found, three to two, that there was some evidence on which the jury could find the omission was unintentional. In the record of the *Stebbins Case*, which was a very close case, there is testimony

to the effect that the claimant there had lived in her grandfather's house for six years; that after that there was correspondence at least once a month, that there was "a loving friendship," and that he was "like a father to her," that he made her many gifts. In addition there was testimony that the testator was feeble-minded at the time of making his will; he left most of his property to charities and when questioned about this, stated that "it is not my money now, it belongs to the Lord." The facts in the *Stebbins Case* are so markedly different from those in the instant case that the former is by no means a controlling precedent.

The testimony in this case is quite meager. The question is: Did it present an issue for the jury's determination? Plaintiffs' mother, the first wife of testator's son, testified she saw the testator at his house with her daughters, the plaintiffs, on the day of her former husband's funeral in August, 1939; that this was the first time she had seen testator since she had divorced his son in 1926; and that this was the last time she saw him. The two girls testified they had received graduation presents from testator in 1934 and 1936 respectively, and letters of condolence on their father's death. They had seen testator when they were still quite small, but had not seen him from about 1931 until their father's death in 1939, about a year after testator made his will. One of the plaintiffs remembered they had received Christmas gifts on two or three occasions. The mother and one of plaintiffs testified there were never any ill feelings between plaintiffs and testator.

As to the extent of their associations, one plaintiff testified on direct examination:

"I do not remember receiving any other communications from my grandfather, except this letter (at

graduation in 1936) and the one received at the time of my father's death.''

The other testified on cross-examination:

''From 1930 to 1935, my father did not call on me. I visited my grandfather before 1930. We had not visited our grandfather from 1930 to the time of my father's death (1939). I wouldn't know where my father was during that period. I did not keep track of him. * * * I didn't hear from the grand-father, except in response to the invitations to my graduation. For a period of nine years, the only communication I had with my grandfather was in response to my invitation to my graduation. * * *

''In the letter of 1936, my grandfather said 'I would like to see you all and hope to do so.' He didn't make any effort to do so, until the time we met him at my father's funeral. I didn't make any effort to see him. My sister didn't make any effort to see him. That condition continued for approximately eight years immediately preceding the making of the will.''

Plaintiffs also proved that a slip of paper was found in the envelope containing testator's will after his death. It was in his own handwriting but was not affixed to his will, nor was it signed by him. It provided as follows:

''It shall be the duty of the administrator to see that my wife (Ellen H. Potts) is unmolested in regard to doing as she pleases with any of my property either personal or real as long as she lives.

''8th. The two daughters, Jeanette and Alice Potts of Detroit of my son Dwight A. Potts by former marriage shall each receive $100 which amount is to be taken from my son's share of the estate.''

Testator's will contained seven numbered para-graphs, and it is plaintiffs' contention that this might

be held a continuation of the will and that this shows testator's intent to include plaintiffs in his will. The probate court and the circuit court declined to take this view.

The circumstances surrounding the making of the will do not shed any light on testator's intentions or lack of intentions concerning plaintiffs. Testator asked a real-estate man to draft a will for him. When told the latter could not do it, testator apparently drew one for himself. No statements were made by testator at that time which would indicate his state of mind regarding his grandchildren.

As to testator's mental and physical condition, the real-estate man and a neighbor testified that he was hard of hearing. However, they further testified he continued to engage in his business as a newspaper circulation man up to the time of his death at the age of 80 years. His death was caused by an accident while driving his own automobile. The real-estate man testified testator appeared to be normal. As noted above, testator seemingly drafted his own will dated August 17, 1938. It made a clear, concise and complete disposition of all of his real and personal estate. The record contains a letter written to one of plaintiffs in 1936 and another in 1939. These and other items of testimony quite conclusively establish testator's keen mentality at the time his will was executed and that he was then fully mindful that he had two granddaughters who were the issue of his son's first marriage.

The foregoing comprises the testimony offered by plaintiffs. It does not give rise to a question of fact. From it a jury could not have found that the testator either unintentionally or by mistake or accident omitted plaintiffs from his will. *Brown* v. *Blesch,* 270 Mich. 576, 580 (97 A. L. R. 1012), holds that "the burden of proof is on the disinherited person to

show that the omission was unintentional and by mistake or accident."

"In every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly find a verdict for the party producing it upon whom the burden of proof is imposed." *Mutual Benefit Health & Accident Ass'n* v. *Snyder* (C. C. A.), 109 Fed. (2d) 469, 472.

See, also, *Randolph* v. *Detroit United Railway*, 213 Mich. 100, 104.

The fact that there was a polite relationship between plaintiffs and their grandfather does not prove he omitted them inadvertently. If it did, practically every will which did not mention a known grandchild of a dead son or daughter would be vulnerable. To sustain the burden of proof, there must be introduced persuasive testimony that the omission was unintentional and by mistake or accident.

The only direct evidence offered by plaintiffs in their attempt to prove that testator intended to provide in his will for them was the slip of paper found with his will. But that was ineffective to prove plaintiffs' case. It merely tended to show that at some time he thought of doing something for plaintiffs but did not do it. He never did sign this memorandum and in other respects it was fatally defective as a testamentary instrument. It was evidently written prior to the death of testator's son in August, 1939. We do not know whether he meant it to have a legal effect or not. A verdict for plaintiffs on such a record would be based on pure conjecture. "The law is well settled that a case should not be submitted to the jury where a verdict must rest upon a conjecture or guess." *Scott* v. *Boyne City, G. & A. R. Co.,* 169 Mich. 265, 272, citing *Fuller*

v. *Ann Arbor R. Co.,* 141 Mich. 66 (18 Am. Neg. Rep. 489); *Powers* v. *Pere Marquette R. Co.,* 143 Mich. 379.

The judgment entered on the directed verdict is affirmed. Costs to appellees.

Chandler, C. J., and Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred with North, J.

Boyles, J. (*concurring*). I concur in the result but do not agree that the issue of unintentional omission of plaintiffs from the will is open to question. Plaintiffs' case is bottomed upon Act No. 288, chap. 2, § 13, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–2 (13), Stat. Ann. 1942 Cum. Supp. § 27.3178 [83]), which applies only when a testator omits to provide for any of his children or for the issue of any deceased child, and *it shall appear that such omission was not intentional but was made by mistake or accident.* This will itself negatives any possibility that the omission was unintentional or made by accident or mistake. The will makes certain provisions for the son, Dwight A. Potts. The death of this son preceded the death of the testator, and plaintiffs are the children of this son. Plaintiffs claim that the failure to provide for them was not intentional. However, the sixth paragraph of this will expressly provides that if the testator's son, Dwight A. Potts, should die before the death of the testator, his part of the estate should be given to his wife and his son Robert in equal shares. Under the circumstances of this case, this provision of the will definitely and positively excludes plaintiffs herein, the children of Dwight A. Potts, from participation, and negatives any possibility that their omission from the will was unintentional.

Nor can these plaintiffs take under the provisions of Act No. 288, chap. 2, § 11, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 (11), Stat. Ann. 1942 Cum. Supp. § 27.3178 [81]), which provides that when a devise or legacy shall be made to any child of the testator and such devisee or legatee shall die before the testator leaving issue surviving the testator, such issue shall take the estate so given. This section does not apply when a different disposition of such legacy or devise shall be made or directed by the will; and this was done in the will now under consideration.